NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-78

HEATHER HILL INVESTMENTS, LLC

vs.

LONG BUILT HOMES, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant (Long Built) appeals from a separate and final judgment in favor of the plaintiff (Heather Hill) declaring that:

(1)   the restated purchase and sale agreement (restated P&S) between the parties dated September 22, 2020, expired of its own terms;

(2)   Long Built forfeited its deposits to Heather Hill;

(3)   Long Built possesses no rights whatsoever under the restated P&S or in Heather Hill's property; and

(4)   Long Built is obligated to immediately assign to Heather Hill all applications, permits, licenses, consents and permissions, together with all studies, reports, plans, specifications and other work product relating to the property[1] as expressly required by paragraph 18 of the restated P&S;

---

[1] The property is a golf course in Plainville.

and dismissing Long Built's counterclaims.  The judgment resulted from the judge's ruling in favor of Heather Hill on its motion for partial summary judgment on Count I of the complaint, which sought a declaratory judgment with respect to the parties' rights and obligations under the restated P&S.  Long Built's counterclaims also sought a declaration as to the rights and obligations of the parties under the restated P&S.[2]

On appeal, Long Built raises three primary arguments.  First, it argues that the judge's interpretation of the restated P&S was incorrect as a matter of law.  Second, Long Built argues that material issues of disputed fact precluded summary judgment.  Third, Long Built argues that the judge abused his discretion in setting a short discovery schedule.  We affirm.

Background.  In September 2020, the parties signed the restated P&S.  The restated P&S provided for the sale of a country club to Long Built on certain terms and conditions.  Among other things, the contract anticipated that there would be three phases to the closing, with payments towards the purchase price at each phase.  An $8 million payment was to be made at

---

[2] Specifically, Long Built's counterclaims asked for a declaration that (1) Long Built had not breached the restated P&S; (2) Heather Hill was required to grant Long Built additional time to obtain the required approvals; and (3) Heather Hill was bound to convey the premises to Long Built under the terms of the restated P&S.  Long Built makes no argument on appeal regarding the dismissal of its counterclaims.

2

the so-called Phase One closing.  Additional conditions and the timing of the Phase One closing were spelled out in paragraph 7. Of pertinence to this case, paragraph 7 provided that the Phase One closing "shall take place on or within thirty (30) days of the date that all of the terms and conditions of [the restated P&S] have been performed, fulfilled or otherwise complied with, including, but not limited to, [Long Built] obtaining all permits, approvals, licenses, consents and permissions necessary for construction" of the first phase of the project to be built on the property, "but in no event later than December 31, 2020" (Phase One closing date).  The Phase One closing date could be extended once for up to three months provided Long Built paid an additional deposit of $50,000, but in no event beyond March 31, 2021.

Long Built did not have in hand all necessary approvals and permits for Phase One by December 31, 2020.  As a result, the Phase One closing date was extended to March 31, 2021, with Long Built paying the required $50,000.  However, when March 31, 2021, arrived, Long Built still did not have the necessary approvals and permits in hand; Long Built did not have site approval from the Plainville planning board, it did not have conservation commission approval, and it did not have an environmental impact permit from the board of health.  It is

3

undisputed that Long Built "was not ready and able to close on or before March 31, 2021," and that the closing did not occur.

Paragraph 18 of the restated P&S bore the heading, "Buyer's Default; Damages," and provided that if Long Built failed to perform any of its obligations within thirty days of notice from Heather Hill, then Heather Hill had the right to terminate the agreement. In that circumstance, Long Built was required to "immediately assign and deliver to [Heather Hill] all applications, permits, licenses, consents and permissions, together with all studies, reports, plans, specifications and other work product relating to the [p]roperty and its development." Paragraph 18 also provided:

> "Notwithstanding the foregoing, in the event that [Long Built] defaults under this [a]greement by failing to close on a timely basis on the purchase of the Phase One Property . . . , or otherwise defaults hereunder, then [Long Built] will also be required to promptly assign, transfer, convey and deliver to [Heather Hill] . . . any and all work product relating to engineering services rendered for [Long Built] . . . including, but not limited to surveys, plans drawings, studies, reports, specifications, environmental reports, calculations, other reports, testing data and all other similarly related materials, and [] any and all permits, approvals, licenses, consents and permissions issued to and/or for the benefit of [Long Built] with respect to the [p]roperty."

Despite demand from Heather Hill, Long Built has not turned over to Heather Hill the materials identified in paragraph 18.

Discussion. "In reviewing a grant of summary judgment, 'we assess the record de novo and take the facts, together with all

4

reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.'" Pugsley v. Police Dep't of Boston, 472 Mass. 367, 370-371 (2015), quoting Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 318 (2014). "'If a contract . . . is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment. . . . Where, however, the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties' may depend on disputed facts requiring a trial.'" James Family Charitable Found. v. State Street Bank & Trust Co., 80 Mass. App. Ct. 720, 725 (2011), quoting from Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).

The defendant first argues that no "default" within the meaning of the restated P&S occurred, and that the restated P&S merely expired of its own terms when the Phase One closing did not take place on March 31, 2021. We disagree. Paragraph 18 of the restated P&S identifies Long Built's failure to timely close on Phase One as an event of "default," even if it might not otherwise be one ("in the event that [Long Built] defaults under this [a]greement by failing to close on a timely basis on the purchase of the Phase One Property . . . or otherwise defaults hereunder" [emphasis added]).

Long Built also argues that Heather Hill never gave notice or an opportunity to cure, and that both were required under

5

paragraph 18 before Long Built could be deemed in default.  This argument is not tethered to the language of paragraph 18.  It is true that the first sentence of paragraph 18 requires that Heather Hill give Long Built notice and an opportunity to cure before Heather Hill can terminate the agreement.  But there is nothing in the summary judgment record to show that Heather Hill terminated the agreement.[3]  In any event, the first sentence of the second paragraph of paragraph 18 sets forth an alternative to termination by introducing its provisions with the phrase "notwithstanding the foregoing."  This alternative provides for a specific form of default, where Long Built "defaults under this [a]greement by failing to close on a timely basis on the purchase of the Phase One [p]roperty."  In this alternative circumstance, there is no requirement that Heather Hill give Long Built notice and an opportunity to cure.  This seems logical, since Long Built's inability to timely close would hardly seem -- as a practical matter -- to be something requiring notice.  And, furthermore, a cure provision would

---

[3] It is true that the judge characterized the contract as having expired of its own terms.  The judge appears to have used this phrase as a form of convenient shorthand, rather than as a term of art.  In any event, "for purposes of our review, we look at a trial judge's decision to allow a motion for summary judgment, albeit useful, as a 'nondispositive prelude.'"  Harrison v. Boston Fin. Data Servs., Inc., 37 Mass. App. Ct. 133, 133 n.1 (1994).

undermine to a large, if not entire, degree the point of a deadline.

Long Built also argues that it cannot be deemed to have defaulted because its obligation to purchase the property never arose. More specifically, Long Built points to paragraph 24 of the restated P&S, which provides that Long Built's "obligation to consummate each of the conveyances contemplated hereunder is expressly subject to satisfactory fulfillment of" a number of conditions. Long Built contends that Heather Hill did not satisfy its own pre-closing conditions until after December 31, 2020. Although Long Built claims that this "fact" is "undisputed," it provides no record citation to support it. Moreover, even accepting the assertion as true, it has no legal significance where the Phase One closing date was extended to March 31, 2021. Secondly, Long Built argues that issuance of the required permits, buildability of the project, and economic feasibility were conditions to the obligation to close on a timely basis. But this reading of paragraph 24 would essentially render paragraph 16 (which placed on Long Built the obligation to obtain all necessary approvals and permits), paragraph 7 (which required that Long Built do so by March 31, 2021), and paragraph 18 (which defines as a default the failure to timely close on Phase One) superfluous. See <u>Tupper</u> v. <u>Hancock</u>, 319 Mass. 105, 109 (1946) ("It is a canon of

7

construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible" [citation omitted]).

To the extent that Long Built argues that its obligations under paragraphs 16 and 7 were excused by or rendered impossible as a result of the COVID-19 pandemic and state of emergency, neither the summary judgment factual record nor the law supports that argument.  The record does not raise a triable issue of fact that the pandemic was the cause of any unanticipated delay after the signing of the restated P&S, let alone that it rendered Long Built's performance impossible or impracticable as those concepts have been recently explained in the context of the COVID-19 pandemic.  See Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 151-163 (2023).

Long Built also argues that Heather Hill waived any right to enforce the timetable contained in the restated P&S based on the parties' course of conduct under the original P&S and amendments to it.  To begin with, Long Built did not timely raise waiver as an affirmative defense, and it is accordingly waived.  See Sharon v. Newton, 437 Mass. 99, 102 (2002), quoting Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974) ("The omission of an affirmative defense from an answer generally constitutes a waiver of that defense").  Setting that aside, Long Built

8

ignores that the restated P&S "specifically supersede[d] the Purchase and Sale Agreement by and between [Heather Hill] and [Long Built] dated September 20, 2016 and relating to the [p]roperty," and that there was no evidence of a course of conduct to indicate that Heather Hill intended to, or did, waive the deadlines contained in the restated P&S.

Long Built argues that the judge improperly disregarded the affidavit of attorney Castignetti on the ground that the affidavit contradicted his deposition testimony. See Smaland Beach Ass'n v. Genova, 461 Mass. 214, 229 n.24 (2006) (party cannot create issue of fact via affidavit contradicting his prior deposition testimony); see also Benvenuto v. 204 Hanover, LLC, 97 Mass. App. Ct. 140, 144 (2020). It also contends that, to the extent that Castignetti's affidavit was in any way at odds with his deposition testimony, those statements were of no importance because the interpretation of the agreement was a matter of law. We certainly agree with this latter proposition. The interpretation of a contract constitutes a question of law for the court; accordingly, a court generally will accord no deference to a party's interpretation of a contract, but will focus on the language of the instrument to effectuate its terms. See Balles v. Babcock Power Inc., 476 Mass. 565, 572-573 (2017). For this reason, even were Castignetti's affidavit to have been

considered, it would not have affected the propriety of summary judgment.

Lastly, Long Built argues that it was an abuse of discretion to set a short discovery period.  "The conduct and scope of discovery . . . are issues within the sound discretion of the motion or trial judge."  Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 159 (1999).  "While discovery orders are reviewable on appeal from entry of a final judgment, we do not interfere with the judge's exercise of discretion in the absence of a showing of prejudicial error resulting from an abuse of discretion" (citation omitted).  Id. at 161.  Here, setting aside the question of whether the judge abused his discretion, Long Built has not shown prejudice.  As we have set out above, the outcome of the summary judgment motion turned on the language of the restated P&S, not on extrinsic facts.

For these reasons, summary judgment was properly allowed, and the separate and final judgment is affirmed.

So ordered.

By the Court (Wolohojian,
Desmond & Sacks, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  December 18, 2023.

---

[4] The panelists are listed in order of seniority.